O

# United States District Court
# Central District of California

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>              Plaintiff,<br><br>     v.<br><br>DAVID BOYD, individually; DAVID BOYD as trustee of ANCESTRAL ACQUISITIONS TRUSTS; All Persons and Entities Known or Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien or Interest in the Real Property Described in the Complaint Adverse to Plaintiff's Interest or Any Cloud on Plaintiff's Interest; DOES 1–25, inclusive,<br><br>              Defendants. | Case No. 2:14-cv-03427-ODW(RZx)<br><br>**ORDER DENYING DEFENDANT DAVID BOYD'S MOTION TO SET ASIDE ENTRY OF DEFAULT [45], GRANTING PLAINTIFF FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT BOYD AS TRUSTEE [31], AND GRANTING PLAINTIFF FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT BOYD INDIVIDUALLY [42]** |

## I.        INTRODUCTION

There are three motions pending before the Court.  The first is Defendant David Boyd's Motion to Set Aside Entry of Default.  (ECF No. 45.)  The other two motions

are both Plaintiff Federal National Mortgage Association's ("Fannie Mae") Motions for Default Judgment Against Defendant Boyd—one against Boyd in his individual capacity (ECF No. 42) and the other against Boyd as trustee of Ancestral Acquisitions Trust (ECF No. 31).  In this action, Fannie Mae seeks to clear title to real property that it now owns as a result of a non-judicial foreclosure sale.  For the reasons discussed below, the Court **DENIES** Boyd's Motion to Set Aside Default, and **GRANTS** both of Fannie Mae's Motions for Default Judgment.

## II.   FACTUAL BACKGROUND

Fannie Mae filed the Complaint on May 2, 2014, bringing claims for (1) cancellation of instruments, (2) quiet title, (3) slander of title, and (4) injunctive relief against Boyd individually and Boyd as trustee of Ancestral Acquisitions Trust.  (ECF No. 1.)  Fannie Mae is seeking to clear title to real property located at 5510 Wilton Place, Los Angeles, California 90062 ("the Wilton Property").  (Compl. ¶ 8.)  Fannie Mae alleges full ownership of the Wilton Property as the result of a non-judicial foreclosure sale conducted on April 27, 2010, and a Trustees Deed Upon Sale, which was recorded on April 30, 2010.  (*Id.* ¶ 9.)  According to Fannie Mae, Boyd and his agents clouded title to the Wilton Property by recording several fraudulent documents in the Los Angeles County Recorder's Office.

Fannie Mae alleges that after it foreclosed on the Wilton Property, Juanita Everline—the borrower subject to the foreclosure—recorded a Grant Deed, reportedly transferring title from Everline to Ancestral Acquisitions Trust.  (*Id.* ¶10.)  The Grant Deed was dated October 6, 2010, and recorded November 8, 2010.  (*Id.*)  Boyd, as trustee of Ancestral Acquisitions Trust, then allegedly executed a Grant Deed from the trust to himself.  (*Id.* ¶ 11.)  This second Grant Deed was dated June 15, 2012, and recorded on June 18, 2012.  (*Id.*)

In 2012, Boyd allegedly retained David Alan Boucher to further assist in clouding the title to the Wilton Property.  (*Id.* ¶ 12.)  Together Boyd and Boucher allegedly recorded a transfer of a Grant Deed from "Federal Home Loan Mortgage

Corporation" to Ancestral Acquisitions Trust dated February 22, 2012.  (*Id.*)  This Grant Deed was recorded on August 1, 2012, and signed by Boucher as "authorized representative" of "Federal Home Mortgage Corporation."  (*Id.*)  Fannie Mae claims that Boucher has a criminal past involving fraud and unauthorized use of the names of lending institutions.  (*See* ECF No. 12 at 3.)  On November 13, 2012, Boyd then executed another Grant Deed from Boyd to Ancestral Acquisitions Trust, which was recorded on November 27, 2012.  (*Id.* ¶ 13.)

Finally, Boyd—in his capacity as trustee of Ancestral Acquisitions Trust— allegedly executed a Grant of Lien from Ancestral Acquisitions Trust to himself dated November 13, 2012.  (*Id.* ¶ 14.)  This Grant of Lien was recorded on December 3, 2012, and purportedly encumbered the Wilton Property in favor of Boyd in the amount of $61,275.00.  (*Id.*)

Fannie Mae took numerous steps to clear the Wilton Property title before entering federal court.  Fannie Mae settled an unlawful detainer action against Everline in 2012 (ECF No. 32, Ex. J), and received an unlawful detainer judgment against Boyd in 2013 (ECF No. 32, Ex. P).

### III.   PROCEDURAL HISTORY

Fannie Mae sued Boyd as an individual and as the trustee of Ancestral Acquisitions Trust.  Boyd's multi-plaintiff role in this action is why the Court must adjudicate two separate Motions for Default Judgment, and is also why the procedural history is clouded.

Boyd's first filing in this case was a meritless Motion to Dismiss (ECF No. 10) which the Court promptly denied (ECF No. 15).  In denying the Motion, the Court advised Boyd to visit the Federal Pro Se Clinic.  (*Id.*)  Boyd, acting in his individual and trustee capacities, then filed a pro se Answer and Counterclaim on July 30, 2014.  (ECF No. 17.)  That same day, the Court issued a Self-Representation Order, detailing the obligations of a pro se litigant and advising Boyd to visit the Federal Pro Se Clinic.  (ECF No. 16.)  Relying on Local Rule 83-2.2.2, which states that "[n]o

1    organization or entity of any other kind (including . . . trusts) may appear in any action

2    or proceeding unless representing by an attorney permitted to practice before this

3    Court," Fannie Mae filed a Request for Entry of Default against Boyd as trustee.

4    (ECF No. 18.)  The Court then issued an Order to Show Cause ordering Boyd to

5    explain why he failed to comply with Local Rules by not retaining counsel to

6    represent the Ancestral Acquisitions Trust.  (ECF No. 20.)  Boyd ignored the Court's

7    Order, and on September 8, 2014, the Court Granted Fannie Mae's Request for Entry

8    of Default Against Boyd as trustee.  (ECF No. 25.)  In granting the Request, the Court

9    struck the Answer and Counterclaim as to Boyd as trustee, and left the Answer and

10   Counterclaim intact as to Boyd in his individual capacity.  (*Id.*)  For the third time, the

11   Court advised Boyd to visit the Federal Pro Se Clinic.  (*Id.*)

12        On September 22, 2014, Fannie Mae filed a Motion for Default Judgment

13   Against Boyd as trustee.  (ECF No. 31.)  Boyd failed to respond, and on October 21,

14   2014, Fannie Mae filed a Reply to Non-Opposition to Motion for Entry of Default

15   Judgment.  (ECF No. 37.)  This Motion is currently pending before the Court.

16        The action against Boyd as an individual took a slightly different trajectory.  On

17   August 18, 2014, Fannie Mae filed a Motion to Dismiss the Answer and Counterclaim

18   as to Boyd as an individual—the week prior, Fannie Mae requested an entry of default

19   against Boyd as trustee.  (ECF No. 21.)  Boyd, as an individual, filed a timely

20   Opposition (ECF No. 27), and Fannie Mae filed a Reply (ECF No. 30).  On October 8,

21   2014, the Court Granted Fannie Mae's Motion and dismissed both the Answer and

22   Counterclaim with leave to amend.  (ECF No. 34.)  The Court concluded that the

23   unintelligible Answer and Counterclaim failed to comply with Federal Rule of Civil

24   Procedure 8, but the Court allowed Boyd twenty-one days to file an amended answer

25   and counterclaim.  (*Id.*)  The Court, once again, advised Boyd to visit the Federal Pro

26   Se Clinic.  (*Id.*)

27        Boyd failed to timely file any amended pleadings, and on November 4, 2014,

28   Fannie Mae filed a Request for Entry of Default Judgment against Boyd individually.

(ECF No. 39).  The Clerk entered default the next day.  (ECF No. 35.)  On November 6, 2014, the Court issued an Order to Show Cause Re Dismissal for Lack of Prosecution against Fannie Mae unless a Motion for Entry of Default Judgment was filed on or before November 13, 2014.  (ECF No. 41.)  On November 11, Fannie Mae filed a Motion for Default Judgment against Boyd as an individual.  (ECF No. 42.)  On November 12, Boyd attempted to file a First Amended Answer and Counterclaim, but the Court rejected the filings because they were eleven days late.  (ECF No. 43.)  Fannie Mae's Motion for Default Judgment Against Boyd Individually is the second pending motion before the Court.  On December 4, 2014, Boyd filed a pro se Motion to Set Aside Entry of Default.  (ECF No. 45.)  This Motion to Set Aside is only applicable to Boyd as an individual—Boyd cannot represent the trust pro se.  The Motion to Set Aside is the third pending motion before the Court.

## IV.    MOTION TO SET ASIDE DEFAULT

For ease of discussion, the Court will first address Boyd's Motion to Set Aside Entry of Default.  (ECF No. 45.)  Boyd filed the Motion on December 4, 2013, and Fannie Mae filed a timely Opposition on December 10, 2014.  (ECF No. 46.)  For the reasons discussed below, the Motion is **DENIED**.

### A.    Legal Standard

Federal Rule of Civil Procedure 55(c) authorizes a court to "set aside the entry of default" for "good cause shown."  Fed. R. Civ. P. 55(c).  District courts look at three factors when deciding whether to set aside a default:  "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default."  *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2001) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).[1]  "Where timely relief is sought from a default . . . doubt, if

---

[1] The same three factors are used in determining whether to vacate an entry of default and vacate a default judgment.  *See Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) ("[W]hen considering a motion to set aside a default entry, the parallels between granting relief from

1  any, should be resolved in favor of the motion to set aside the [default] so that cases
2  may be decided on their merits." *Mendoza v. Wright Vineyards Mgmt.*, 783 F.2d 941,
3  945–46 (9th Cir. 1986) (internal quotation marks omitted).

4  **B.   Discussion**

5         The first factor from *Brandt* requires the Court to consider whether Fannie will
6  be prejudiced if the entry of default is set aside.  *See Brandt*, 653 F.3d at 1111.  Boyd
7  argues that Fannie Mae will not be prejudiced because setting aside the default would
8  not adversely affect discovery or result in a greater opportunity for fraud or collusion.
9  (ECF No 45 at 8.)  The Court disagrees.  Fannie Mae purchased the Wilton Property
10 in 2010 and is unable to sell this property until the title is clear.  Boyd forced Fannie
11 Mae to bring an unlawful detainer action in state court and now this cause of action in
12 federal court.  The Complaint was filed on May 2, 2014, and the Court has yet to see a
13 single coherent filing from Boyd, to include an Answer.  Boyd appears to be the sole
14 obstruction to Fannie Mae.  The Court finds that Fannie Mae would be prejudiced if
15 Boyd was allowed to continue, as discussed *infra*, his disregard and obstruction of the
16 judicial process.  This factor weighs in favor of Fannie Mae.

17        The second factor requires the Court to consider whether Boyd has a
18 meritorious defense to this action.  *See Brandt*, 653 F.3d at 1111.  "A defendant
19 seeking to vacate a default judgment must present specific facts that would constitute
20 a defense."  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001),
21 *overruled in part on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S.
22 141 (2001).  Boyd's alleged "meritorious defense" is that he "has a vested equitable
23 and tangible interest" in the Wilton Property allegedly supported by a declaration.
24 (ECF No. 45 at 6.)  The only declaration attached to Boyd's Motion is his declaration
25 claiming that his First Amended Answer was timely filed.  (*Id.* at 8.)  Notwithstanding
26 the lack of a declaration, there are simply no facts, least "*specific*" facts, to suggest a

27

28  a default entry and a default judgment encourage utilizing the list of grounds for relief provided in
Rule 60(b)[.]" ).

meritorious defense.  *See TCI Group Life*, 244 F.3d at 700.  To the contrary, all evidence suggests that Boyd engaged in fraud.  This factor weighs in favor of Fannie Mae.

The final factor requires the Court to determine whether Boyd's culpability led to the entry of default.  *See Brandt*, 653 F.3d at 1111.  Boyd claims that he "is a victim of own [*sic*] legal ineptness and limited financial resources," and "[t]hough Defendant has newly retained counsel in California . . . Defendant diligently contacted may different (finish narrative) [*sic*]."  (ECF No. 45 at 4.)  Once again, this argument is unsubstantiated.  The record is replete with examples of Boyd's blatant disregard for the Court's authority.  The Court advised Boyd to seek guidance from the Federal Pro Se Clinic on at least four different occasions, to include a specific order with instructions for pro se litigants.  The Court notes that Boyd is fully capable of creating a trust, serving as a trustee, making official recordings, filing liens, and defending against an unlawful detainer action in state court—all legal actions—yet cannot somehow find a way to comply with a single order from the Court.  Boyd is 100 percent responsible for the entry of default.  This factor weighs heavily in Fannie Mae's favor.

## C.   Conclusion

After considering the three factors from *Brandt*, the Court finds that Boyd failed to make any showing of "good cause" as required under Rule 55(c).  The party seeking to vacate an entry of default bears the burden of demonstrating that these factors weigh in his favor, *see TCI Group Life*, 244 F.3d at 696, and Boyd failed to carry this burden with his unsubstantiated and unintelligible Motion to Set Aside Entry of Default.  The Court has no doubt that Boyd failed to make a showing of good cause.  Accordingly, the Court **DENIES** Boyd's Motion to Set Aside Entry of Default.

/ / /

/ / /

# V.   MOTIONS FOR DEFAULT JUDGMENT

As explained in Part III, *infra*, there are two pending motions for default judgment, both brought under Rule 55(b)(2).  One is against Boyd as an individual (ECF No. 42), and the other against Boyd as trustee of the Ancestral Acquisitions Trust (ECF No. 31).  Since both unopposed motions rely on identical underlying facts, they will be addressed simultaneously.  For the reasons discussed below, the Court **GRANTS** both motions.

## A.   **Legal Standard**

Rule 55(a) authorizes the Clerk of the Court to enter a party's default, and Rule 55(b)(2) authorizes a court to then enter a default judgment against the defaulting party.  *See* Fed. R. Civ. P. 55.  Local Rule 55–1 first requires the party seeking default judgment to submit a declaration stating (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and (5) that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2).  C.D. Cal. L.R. 55-1.

Rule 55(b) grants the district court discretion to then grant default judgment against the defaulted party.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("Clearly, the decision to enter a default judgment is discretionary.").  In exercising its discretion, a court must consider several factors before entering default judgment:  (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy

underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (the "*Eitel* factors").

Generally, the defendant's liability is conclusively established upon default and the well-pleaded factual allegations in the complaint are accepted as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987). "The district court is not required to make detailed findings of fact" when entering default judgment. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

**B.   Discussion**

The Court first finds that Fannie Mae complied with the requirements of Local Rule 55-1.  For the reasons discussed below, the Court also finds that the *Eitel* factors weigh in favor of Fannie Mae and the entry of default judgment against Boyd, as an individual and trustee, is appropriate.

1. Factor 1:  Possibility of Prejudice to Fannie Mae

Without a default judgment, Fannie Mae cannot obtain relief.  Boyd cannot avoid the consequences of his actions by ignoring orders from the Court.  This factor weighs in favor of Fannie Mae.

2.  Factors 2 and 3:  The Merits of Fannie Mae's Substantive Claims and the Sufficiency of the Complaint

Factors two and three overlap in substance and are best suited for joint discussion.  Both factors focus on the merits of the claims found in the well-pleaded Complaint.  Fannie Mae's Complaint asserts three state law causes of action: (1) cancellation of instruments; (2) quiet title; and (3) slander of title.  (ECF No. 1.)  The Court notes that the Complaint lists a fourth "cause of action" for "Injunctive Relief," however, injunctive relief is a remedy and not a cause of action.  *See Catholic Social Sevs., Inc. v. I.N.S.*, 182 F.3d 1053, 1062 (9th Cir. 1999); *Shamsian v. Atl. Richfield Co.*, 132 Cal. Rptr. 2d 635, 648–49 (Cal. Ct. App. 2003).  For ease of discussion, the Court will address the quiet title cause of action first.

a. *Quiet Title*

The second cause of action is a statutorily-created claim for quiet title.  *See* CAL. CIV. PROC. CODE §§ 760.010, *et seq*.  The statutory action to quiet title establishes the plaintiff's title to real property against adverse claims, and contains specific procedural requirements that courts must follow to adjudicate the cause of action.  *Id.*  To state a claim for quiet title, "the complaint shall be verified" and must include all of the following:  (1) a legal description of the property and its street address or common designation; (2) the title of the plaintiff and the basis of the title; (3) the adverse claims to the title of the plaintiff; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims.  *Id.* § 761.020.  California prohibits the entry of default judgment in a quiet title action *unless* the Court conducts a thorough review of the evidence.  Section 764.010 states:

> The court shall examine into and determine the plaintiff's title against the claims of all the defendants.  The court shall not enter judgment by default but shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants, other than claims the validity of which is admitted by the plaintiff in the complaint.  The court shall render judgment in accordance with the evidence and the law.

*Id.* § 764.010.

California courts conclude that "a quiet title judgment requires a hearing in open court.  Although section 764.010 does not mandate oral argument—and we do not hold oral argument is necessary, though it may be helpful—the statute requires examining plaintiff's title and hearing defendant's evidence 'in all cases.'"  *Harbour Vista, LLC v. HSBC Mortg. Servs. Inc.*, 134 Cal. Rptr. 3d 424, 433 (Cal. Ct. App. 2011).  "Competent evidence is required at the hearing of a quiet title action after

default" and section 764.010 "simply provides that a plaintiff does not have a right to entry of judgment in his or her favor *as a matter of course* following entry of the defendant's default in a quiet title action." *Yeuong v. Soos*, 14 Cal. Rptr. 3d 502, 505 (Cal. Ct. App. 2004) (original emphasis).

The Court held an opening hearing on January 12, 2015, and followed federal procedural rules in relying on competent, judicially noticed evidence. "Judicial notice is appropriate for records and reports of administrative bodies." *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (internal quotation marks omitted); *see* Fed. R. Evid. 201(b) (stating that a "judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."). Fannie Mae's Request for Judicial Notice provides copies—which include official reference numbers—for all recorded legal instruments involved in this case (ECF No. 32); this demonstrates that the instruments are public records and appropriate for judicial notice. *See Grant v. Aurora Loan Servs., Inc.*, 726 F. Supp. 2d 1257, 1264 (C.D. Cal. 2010) (collecting cases for this principle). Accordingly, the Court finds that all public records in Fannie Mae's Request for Judicial Notice are competent and not subject to reasonable dispute, and therefore takes judicial notice. (ECF No. 32.)

The Court concludes that Fannie Mae's Complaint is sufficient to make a claim for quiet title under section 761.020, and the judicially-noticed evidence indicates that this claim is meritorious. The first element of a quiet title cause of action is satisfied because the Complaint provides the legal description and address of the Wilton Property. The property is legally described as: "Lot 590, Chesterfield Square, in the City of Los Angeles, County of Los Angeles, State of California, as per map Recorded in Book 21, Page(S) 90 to 91 of Maps in the Office of the County Recorder of said County." (Compl. ¶ 8.) The address is "5510 Wilton Place, Los Angeles, CA 90062." (*Id.*)

The second element of the cause of action is also satisfied because the Complaint identifies Fannie Mae's title and the basis of the title. Fannie Mae obtained title to the Wilton Property through a non-judicial foreclosure sale conducted on April 27, 2010, and a Trustees Deed Upon Sale recorded April 30, 2010, as Instrument No. 20100590323 of the Official Records of Los Angeles County. (Compl. ¶ 9.) The Complaint identifies this basis of title, and the Court takes judicial notice of a copy of Fannie Mae's title. (*See* ECF No. 32, Ex. H.) "A properly conducted non-judicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender," *Moeller v. Lien*, 30 Cal. Rptr. 2d 777, 783 (Cal. Ct. App. 1994), and there is no contention that Fannie Mae's Trustees Deed Upon Sale was unlawfully obtained or that the non-judicial foreclosure sale was unlawful.

The third element of the cause of action is satisfied because Boyd makes an adverse claim to the Wilton Property title. As explained in the Complaint and verified by officially recorded instruments found in Fannie Mae's Request for Judicial Notice, Boyd recorded multiple deeds on the Wilton Property. Following Fannie Mae's recording in April 2010, Everline recorded a Grant Deed purportedly transferring title to the Wilton Property from Everline to Ancestral Acquisitions Trust, dated October 6, 2010, and recorded November 8, 2010, as Instrument No. 20101604228 of the Official Records of Los Angeles County, California. (Compl. ¶ 10; ECF No. 32, Ex. I.) In 2012, Boyd acting as trustee of the Ancestral Acquisitions Trust, executed a Grant Deed purportedly from Ancestral Acquisitions Trust to David Boyd as an individual, dated June 15, 2012, and recorded June 18, 2012, as Instrument No. 20120904079 of the Official Records of Los Angeles County, California. (Compl. ¶ 11; ECF No. 32, Ex. K.) Several months later, Boucher executed a Grant Deed purportedly from "Federal Home Loan Mortgage Corporation" to Ancestral Acquisitions Trust, dated February 22, 2012, and recorded August 1, 2012, as Instrument No. 20121138070 of the Official Records of Los Angeles County, California. (Compl. ¶ 12; ECF No 32, Ex. L.) Boyd then executed a Grant Deed purportedly from Boyd to Ancestral

1    Acquisitions Trust dated November 13, 2012, and recorded on November 27, 2012, as

2    Instrument No. 20121798299 of the Official Records of Los Angeles County,

3    California.  (Compl. ¶ 13; ECF No. 32, Ex. M.)  The final action occurred when Boyd,

4    acting as a trustee, executed a Grant of Lien purportedly from Ancestral Acquisitions

5    Trust to Boyd, as an individual, dated November 13, 2012, and recorded December 3,

6    2012, as Instrument No. 20121838938 of the Official Records of Los Angeles County,

7    California.  (Compl. ¶ 14; ECF No. 32, Ex. N.)  In his Motion to Set Aside Entry of

8    Default, Boyd states that he "has a vested equitable and tangible interest" in the

9    Wilton Property.  (ECF No. 45 at 6.)  Boyd provides no instrument, deed, or even

10   declaration to support this contention.

11         The fourth and fifth elements of the quiet title cause of action—date of

12   determination and prayer for the determination of title—are easily satisfied in Fannie

13   Mae's Complaint.  (Compl. ¶ 34.)  Fannie Mae requests the Court to quiet title in its

14   favor as of the date Fannie Mae recorded its Trustees Deed Upon Sale.  (*Id.*)

15         "[R]ecording laws mandate that the first recorded deed of trust on real property

16   is superior to subsequently recorded deeds."  *In re Sunset Bay Assocs.*, 944 F.2d 1503,

17   1508 (9th Cir. 1991) (citing CAL. CIV. PROC. CODE § 1214).  The Court finds that

18   Fannie Mae has a valid claim to the Wilton Property title free and clear of all

19   subsequently recorded interests.  The record in this case is littered with subsequently

20   recorded, inferior deeds.  Fannie Mae properly recorded its Trustees Deed of Upon

21   Sale on April 30, 2010, yet Boyd proceeded to make five subsequent—and apparently

22   fraudulent—recordings.  Boyd had proper record notice of Fannie Mae's title, and

23   therefore is without right to any title to the Wilton Property.  *See In re Marriage of*

24   *Cloney*, 110 Cal. Rptr. 2d 615, 625 (Cal Ct. App. 2001) ("[I]t is an equally well-

25   established principle of law that any purchaser of real property acquires the property

26   subject to prior interests of which he or she has actual or constructive notice.").

27   / / /

28   / / /

1    The evidence adduced through judicial notice leave the Court no doubt that title

2  to the Wilton Property properly belongs to Fannie Mae.  Accordingly, the second and

3  third *Eitel* factors weigh in favor of Fannie Mae for the quiet title cause of action.

4                    *b. Cancellation of Instruments*

5        California law authorizes the cancellation of written instruments if "there is a

6  reasonable apprehension that if left outstanding it may cause serious injury to a person

7  against whom it is void or voidable[.]"  CAL. CIV. CODE § 3412; *see Rockridge Trust v.*

8  *Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1159 (N.D. Cal. 2013) ("The Court may

9  order cancellation of an invalid written instrument that is void or voidable.").

10        The Complaint sufficiently alleges a valid claim for cancellation of instruments.

11  (Compl. ¶ 7–34.)  As explained *supra*, there are five void instruments recorded on the

12  Wilton Property's title:  Instrument Nos. 20101604228, 20120904079, 20121138070,

13  20121798299, and 20121838938.  Everline had no legal right to convey the Wilton

14  Property to Boyd, and any subsequent conveyance is also void.  *See Trout v. Taylor*,

15  32 P.2d 968, 970 (Cal. 1934) ("[A]n instrument wholly void, such as an undeliverable

16  deed, a forged instrument, or a deed in blank, cannot be made the foundation of a

17  good title, even under the equitable doctrine of bona fide purchase.").  These

18  instruments now prohibit Fannie Mae from selling the property, which is a serious

19  injury.  The Complaint properly alleges a substantiated claim for cancellation of

20  instruments, and therefore the second and third *Eitel* factors weigh in favor of Fannie

21  Mae for the cancellation of instruments cause of action.

22                    *c. Slander of Title*

23        The final cause of action is for slander of title.  "Slander or disparagement of

24  title occurs when a person, without privilege to do so, publishes a false statement that

25  disparages title to property and causes the owner thereof some special pecuniary loss

26  or damage."  *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 141

27  Cal. Rptr. 3d 109, 135 (Cal. Ct. App. 2012) (internal quotation marks and citations

28  omitted).  "If the publication is reasonably understood to cast doubt upon the existence

or extent of another's interest in land, it is disparaging to the latter's title."   *Id.*
California follows the Restatement Second of Torts' definition of "pecuniary loss" for
a slander of title cause of action:

> The pecuniary loss for which a publisher of injurious
> falsehood is subject to liability is restricted to (a) the
> pecuniary loss that results directly and immediately from the
> effect of the conduct of third persons, including impairment
> of vendibility or value caused by disparagement and (b) the
> expense of measures reasonably necessary to counteract the
> publication, including litigation to remove the doubt cast
> upon vendibility or value by disparagement.

*Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 633(1)).   "Accordingly, it is well-
established that attorney fees and litigation costs are recoverable as pecuniary
damages in slander of title causes of action when . . . litigation is necessary to 'remove
the doubt cast' upon the vendibility or value of plaintiff's property."   *Id.*

Fannie Mae's Complaint sufficiently alleges the elements of a slander of title
cause of action.   (Compl. ¶¶ 38–62.)   Boyd without privilege, recorded fraudulent
documents, and forced Fannie Mae to incur legal fees to remove doubt cast upon the
Wilton Property title.   (*Id.*)   The facts as alleged are sufficient to establish a
meritorious case for slander of title, and therefore the second and third *Eitel* factors
weigh in favor of Fannie Mae on this claim.

3.  Factor 4—Amount of Money at Stake

The fourth *Eitel* factor requires the Court to consider the sum of money at stake
in the action.   This factor "requires that the court assess whether the recovery sought is
proportional to the harm caused by the defendant's conduct."   *Landstar Ranger, Inc.
v. Parth Enters.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).   While the allegations in
the complaint are taken to be true for purposes of default judgment, courts must make
specific findings of fact in assessing the amount of damages.   *See Fair Hous. Of*

*Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  The Court has discretion to determine the amount of damages to award.  *Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704, 712 (9th Cir. 1999).

The only money at stake in this action is the attorneys' fees stemming from the slander of title cause of action—ordering a quiet title and cancellation of instruments does not involve damages.  All of the attorneys' fees in this matter are a direct result of Boyd's fraudulent conduct and blatant disregard for the Court's authority.  The recovery of attorneys' fees is perfectly proportional to the harm Boyd caused.  While the exact amount of attorneys' fees is currently unknown as this case is not yet closed, the Court is confident that this factor weighs heavily in favor of Fannie Mae.

### 4.  Remaining *Eitel* Factors

The remaining *Eitel* factors all weigh in favor of Fannie Mae.  The fifth factor considers the possibility of dispute concerning material facts.  Nothing in the record— which is teeming with evidence of Boyd's wrongdoing—suggests that there is any dispute of material fact surrounding any document or action in this case.

The sixth factor considers whether Boyd's default was the result of excusable neglect.  As previously explained, *see supra* Part IV.B, there is no excusable neglect in this case.

The seventh factor focuses on the strong policy favoring a decision on the merits.  While the Court would prefer to resolve this matter on the merits, Boyd's actions leave the Court with no other option.  The repeated disregard for the Court's authority trumps the policy favoring a decision on the merits.

### C.  Remedies

Rule 54(c) provides that the relief granted following a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c).  Fannie Mae's Complaint requests (1) a cancellation of the fraudulent instruments, (2) a quiet title of the Wilton Property in its favor, (3) damages by way of attorneys' fees incurred in removing the cloud from the Wilton Property

title, and (4) a permanent injunction enjoining Boyd from recording any further instruments or documents against the Wilton Property title.  (Compl. at 12–13.)  The Court finds all of these remedies appropriate.  A default judgment on the first two causes of action—quiet title and cancellation of instruments—is appropriately remedied by equitable orders from the Court.  The third cause of action—slander of title—is appropriately remedied by damages and an injunction against future perpetration of the slander of title.  *See Phillips v. Glazer*, 211 P.2d 37, 38–39 (Cal. 1949).  Counsel for Fannie Mae is directed to file a written request for attorneys' fees, supported by declarations, within ten days of entry of this Order.

## VI.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Boyd's Motion to Set Aside Entry of Default (ECF No. 45), **GRANTS** Fannie Mae's Motion for Default Judgment Against Boyd Individually (ECF No. 42), and **GRANTS** Fannie Mae's Motion for Default Judgment Against Boyd as Trustee of Ancestral Acquisitions Trust (ECF No. 31).  A permanent injunction and default judgment will issue separately.

**IT IS SO ORDERED.**

January 12, 2015

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**